# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| PEPE TOOLS, INC., an Oklahoma corporation, d/b/a PEPETOOLS, INC.<br><br>      Plaintiff;<br>vs.<br><br>SUNSTONE ENGINEERING, LLC, a Utah limited liability company;<br><br><br>      Defendant. | Case No. CIV-23-907-D |

### PLAINTIFF PEPE TOOLS, INC.'S RESPONSE
### IN OPPOSITION TO DEFENDANT'S MOTION TO
### <u>DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE</u>

January 8, 2024

Evan W. Talley, Esq., OBA #22923
DUNLAP CODDING, PC
609 W. Sheridan Avenue
Oklahoma City, OK  73102
Tel: 405-607-8600; Fax: 405-607-8686
<u>etalley@dunlapcodding.com</u>

***Attorneys for Plaintiff, Pepe Tools, Inc.***
***d/b/a Pepetools, Inc.***

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

ARGUMENT AND AUTHORITIES .......................................................................................2

   **I. THE COURT SHOULD DENY SUNSTONE'S MOTION TO DISMISS BECAUSE THIS COURT HAS PERSONAL JURISDICTION OVER SUNSTONE** ..............................................................................................................2

      **a. Venue is Proper in this District Because Sunstone is Subject to This Court's Personal Jurisdiction**.........................................................................3

         **1. Pepetools has established specific personal jurisdiction over Sunstone.** ......4

         **2. Pepetools has established general personal jurisdiction over Sunstone.** ......7

      **b. Venue is Also Proper in this District Because "A Substantial Part of Property That is the Subject of the Action is Situated" in this District** .............................8

   **II. THE COURT SHOULD DENY DEFENDANT'S MOTION TO TRANSFER VENUE BECAUSE SUNSTONE HAS NOT CARRIED ITS BURDEN OF SHOWING THAT THE WESTERN DISTRICT OF OKLAHOMA IS INCONVENIENT OR THAT "THE BALANCE IS STRONGLY IN FAVOR" OF TRANSFER** ....................................................................................................10

      **a. Application of the Private Interest Factors Weighs Heavily In Favor of Pepetools' Choice of Forum—the Western District of Oklahoma** ....................11

      **b. Pepetools is not Bound by the Terms and Conditions Found on Sunstone's Website**...............................................................................................................13

CONCLUSION ..................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Industry Company, Ltd. v. Superior Court*,
   480 U.S. 102 (1987) ...................................................................................................5

*AST Sports Science, Inc. v. CLF Distribution Limited*,
   514 F.3d 1054 (10th Cir. 2008) ................................................................................2

*Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd.*,
   385 F.3d 1291 (10th Cir. 2004) ........................................................................3, 4, 5

*Benton v. Cameco Corp.*,
   375 F.3d 1070 (10th Cir. 2004) ................................................................................7

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...............................................................................................4, 5

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
   928 F.2d 1509 (10th Cir. 1991) ..............................................................................10

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ................................................................................2

*Emp. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010) ..............................................................................10

*Federal Deposit Ins. Corp. v. Oaklawn Apartments*,
   959 F.2d 170 (10th Cir. 1992) ..............................................................................2, 3

*Helicopteros Nacionales de Colombia v. Hall*,
   466 U.S. 408 (1984) ...............................................................................................4, 7

*Hewitt v. Salina*,
   No. CIV-11-969-M, 2012 WL 29154 (W.D. Okla. Jan. 5, 2012) ...........................13

*Kuenzle v. HTM Sport–Und Freizeitgerate AG*,
   102 F.3d 453 (10th Cir. 1996) ..................................................................................8

*McClelland v. Watling Ladder Co.,*
  729 F.Supp. 1316 (W.D. Okla. 1990) .............................................................................. 3

*Melea, Ltd. v. Jawer SA,*
  511 F.3d 1060 (10th Cir. 2007) ....................................................................................... 2

*Mich. Ele. Emps. Health Plan v. Granite Re, Inc.,*
  No. CIV-10-1164-D, 2011 WL 1870234 (W.D. Okla. May 16, 2011) ......................... 13

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,,*
  149 F.3d 1086, 1091 (10th Cir. 1998)) ............................................................... 5, 7, 10

*Peay v. BellSouth Med. Assistance Plan,*
  205 F.3d 1206 (10th Cir. 2000) ....................................................................................... 3

*Pro Axess, Inc. v. Orlux Distribution, Inc.,*
  428 F.3d 1270 (10th Cir. 2005) ....................................................................................... 4

*Rambo v. American Southern Ins. Co.,*
  839 F.2d 1415 (10th Cir. 1988) ....................................................................................... 3

*Register.com, Inc. v. Verio, Inc.,*
  356 F.3d 393 (2d. Cir. 2004) .................................................................................... 16, 17

*RES-NV, LLC v. Rosenberg,*
  No. 2:13CV00115DAK, 2013 WL 3548697 (D. Utah July 11, 2013) ........................... 9

*Scheidt v. Klein,*
  956 F.2d 963 (10th Cir. 1992) ................................................................................... 10, 11

*Soma Medical International v. Standard Chartered Bank,*
  196 F.3d 1292 (10th Cir. 1999) ....................................................................................... 2

*Southwest Airlines Co. v. BoardFirst, L.L.C.,*
  2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ............................................... 15, 16, 17

*Specht v. Netscape Communications Corp.,*
  306 F.3d 17 (2d Cir. 2002) ....................................................................................... 16, 17

*Texas Gulf Sulphur Co. v. Ritter,*
  371 F.2d 145 (10th Cir. 1967) ....................................................................................... 10

iv

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
   Case No. 99-cv-7654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003)...........................14

*Wenz v. Memery Crystal,*
   55 F.3d 1503 (10th Cir. 1995)........................................................................................3

*Whyte Monkee Productions, LLC v. Netflix, Inc.*,
   No. CIV-20-933-D, 2021 WL 6012299 (W.D. Okla. Feb. 1, 2021)..............................12

*Wood v. Houghton Mifflin Harcourt Publ'g Co.*,
   No. CIV-07-1516-DME-BNB, 2008 WL 2113344 (D. Colo. May 19, 2008) ..............12

*World–Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286(1980) .................................................................................................3, 5

## **Statutes**

28 U.S.C. § 1391(b)(2) ................................................................................................8, 9
28 U.S.C. § 1391(b)–(c) ...................................................................................................3
28 U.S.C. § 1404(a)..............................................................................................passim
Okla. Stat. tit. 23, § 111...................................................................................................9
Okla. Stat. tit. 78, § 51.....................................................................................................9
Okla. Stat. tit. 78, § 85.....................................................................................................9

## **Rules**

Fed. R. Civ. P. 45............................................................................................................12

**INTRODUCTION**

Plaintiff Pepe Tools, Inc. ("Pepetools") here responds to Defendant Sunstone Engineering, LLC's ("Sunstone") Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue [Dkt. No. 8] ("the Motion"). The Motion to Dismiss should be denied because this Court has personal jurisdiction over Sunstone as Sunstone has purposefully availed itself of the forum, and its contacts with Oklahoma form the basis for Pepetools' claims against Sunstone. Over the course of its business relationship with Pepetools, Sunstone representatives communicated almost daily with Pepetools representatives in Oklahoma; visited Oklahoma on multiple occasions for reasons directly related to its business relationship with Pepetools; knowingly sent at least $2,000,000-worth of "palletized" shipments directly to the Pepetools facility in Oklahoma; conducted more than $6,000,000-worth of total business with Oklahoma-based Pepetools; and caused to be sent to Pepetools in Oklahoma the cease-and-desist letters that form the basis for five of Pepetools' six causes of action.

Sunstone's attempts to transfer this action to the United States District Court for the District of Utah under 28 U.S.C. § 1404(a) should also be denied. Sunstone has not demonstrated that Oklahoma is an inconvenient forum, nor come close to demonstrating that the balance of factors strongly favors transfer, given Pepetools' choice of this Court. Sunstone has also not provided the Court any binding authority or requisite evidence by which it could find the existence of a "browsewrap" agreement. Accordingly, the Motion should be denied.

1

**FACTUAL BACKGROUND**

In addition to the background information provided by Sunstone in its Motion, Pepetools expressly incorporates the factual allegations in the Complaint [Dkt. No. 1], as well as the additional factual allegations and evidence contained in and attached to the concurrently-filed declaration of Pepetools' President, Mr. David Aizenman ("Aizenman Decl.")

**ARGUMENT AND AUTHORITIES**

**I.      THE COURT SHOULD DENY SUNSTONE'S MOTION TO DISMISS BECAUSE THIS COURT HAS PERSONAL JURISDICTION OVER SUNSTONE**

The Court has discretion to determine the procedure to employ when considering a motion to dismiss for lack of personal jurisdiction. *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992). Where the Court does not hold an evidentiary hearing, a plaintiff must only make a *prima facie* showing of personal jurisdiction by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *AST Sports Science, Inc. v. CLF Distribution Limited,* 514 F.3d 1054, 1057 (10th Cir. 2008); *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1065 (10th Cir. 2007). The same rule applies where the Court allows discovery on the issue and does not conduct a hearing. *Soma Medical International v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999). The Court considers and construes as true only "plausible, nonconclusory, and non-speculative" allegations in the Complaint. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008). If the parties

2

submit conflicting affidavits, all factual disputes must be resolved in Plaintiffs' favor. *AST,* 514 F.3d at 1057 (citing *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)). By the end of trial, however, the plaintiff must have proved the jurisdictional facts by a preponderance of the evidence. *Federal Deposit Ins. Corp.,* 959 F.2d at 174 (citations omitted).

### a.   Venue is Proper in this District Because Sunstone is Subject to This Court's Personal Jurisdiction

As Sunstone notes, for the purposes of determining venue, a defendant entity "resides" in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(b)–(c). It is well established that, to be subject to the personal jurisdiction of the court, a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due process. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291(1980); *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir. 2000). "The analysis of the personal jurisdiction question in diversity cases generally involves a 2–step inquiry: courts must determine whether the exercise of jurisdiction is consistent with (1) the long-arm statute of the forum state, and (2) the due process clause of the fourteenth amendment." *McClelland v. Watling Ladder Co.,* 729 F.Supp. 1316, 1318 (W.D. Okla. 1990). In Oklahoma, that test becomes a single inquiry because Oklahoma's long-arm statute extends to the full extent of due process. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1416 (10th Cir. 1988).

The "minimum contacts" required to satisfy due process may be shown by evidence sufficient to establish "general" or "specific" jurisdiction. *Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd.,* 385 F.3d 1291, 1296 (10th Cir. 2004) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985)). General personal jurisdiction exists where a plaintiff's cause of action does not result from the defendant's conduct within the state, but the defendant has maintained "continuous and systematic general business contacts in the state." *Bell Helicopter,* 385 F.3d at 1296 (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–415 (1984)). Specific personal jurisdiction exists where a defendant does not have continuous contacts with the state, but the plaintiff shows that (1) the defendant has purposefully directed its activities at residents of the forum state and (2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 473. In this case, Pepetools contends that the evidence is sufficient to satisfy the requirements of both specific and general personal jurisdiction over Sunstone.

### (1) Pepetools has established specific personal jurisdiction over Sunstone.

To determine if specific personal jurisdiction may be exercised over Sunstone, the Court must engage in a "two-step inquiry" to ensure that due process is satisfied. *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1276–1277 (10th Cir. 2005). First, the Court should examine the nature and the quality of Sunstone's contacts with Oklahoma to determine if they are sufficient to show Sunstone "purposefully availed" itself of the benefits of doing business here, thus invoking the benefits and protections of Oklahoma law. *Id.* If the evidence is sufficient to support that conclusion, the Court must then consider

4

whether the exercise of personal jurisdiction over Sunstone "offends traditional notions of fair play and substantial justice." *Id.* (citations omitted).

A defendant's contacts are sufficient to show "purposeful availment" if "the defendant purposefully directed its activities at residents of the forum, and ... the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *OMI Holdings,* 149 F.3d at 1091 (quotations, citations, and emphasis omitted). The requirement of "purposeful availment" precludes personal jurisdiction where the contacts are "random, fortuitous, or attenuated." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. (citations and internal quotation marks omitted). "Specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else." *Bell Helicopter,* 385 F.3d at 1296. However, if another party acts unilaterally, "solicitation" by the defendant is "some evidence suggesting purposeful availment." *Id.,* at 1297. "[T]he mere foreseeability that a customer will unilaterally move a chattel into a given state does not create jurisdiction over the vendor of the chattel." *Bell Helicopter,* 385 F.3d at 1297 (citing *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 559). "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Company, Ltd. v. Superior Court,* 480 U.S. 102, 112 (1987) (plurality opinion) (O'Connor, J.).

Here, Pepetools presents evidence through the Aizenman Declaration for how Sunstone availed itself of Oklahoma and how the injuries complained-of by Pepetools arise out of or are related to Sunstone's contacts with Oklahoma. Mr. Aizenman details the

genesis in 2019 of the business relationship between Pepetools and Sunstone, including Sunstone's unsolicited offers to Pepetools to provide Pepetools free advertising, include it in trade magazines, and co-brand webinars. [Aizenman Decl., at ¶¶ 5–8]. Mr. Aizenman describes at least two instances in which Sunstone representatives visited Oklahoma for reasons directly related to its business with Pepetools, including at least one visit to the Pepetools' facility, not to mention Mr. Aizenman's almost-daily communications with Sunstone representatives relating to Pepetools' orders placed with Sunstone. *Id.* at ¶¶ 9–12. Finally, and perhaps most telling about the gravity of Sunstone's contacts with Oklahoma, specifically Pepetools, Mr. Aizenman testifies to the amount of business that Sunstone and Pepetools conducted between 2019 and 2023: over $6,000,000, with well in excess of $2,000,000 of that constituting the "palletized goods" that Sunstone describes in its Motion. *Id.* at ¶¶ 20–21.[1] That amount of business was certainly enough to establish a "nexus" between Sunstone and Oklahoma that required Sunstone collect and remit sales tax to Oklahoma. *See id.* at ¶ 22. On top of all that, Sunstone directed a series of cease-and-desist letters to Pepetools [*see* Dkt. Nos. 1-3–1-5] in Oklahoma that led directly to Pepetools commencing this action. The threats in those cease-and desist letters form the basis for five of Pepetools' six causes of action, while Sunstone's failure to fulfill a purchase order to which it had already agreed forms the basis for Pepetools' breach of contract cause of action.

---

[1] Suntone's Motion includes a red herring argument about the "mechanics" of how goods were shipped from the Sunstone facility upon receiving an order or orders from Pepetools. However, Sunstone does not provide a single case supporting that those "mechanics" somehow affect whether this Court may exercise personal jurisdiction over Sunstone.

Thus, not only does Sunstone have significant contacts with Oklahoma, but it is those contacts, namely its commercial relationship with Pepetools, that led to the commencement of this suit. Exercise of jurisdiction over an entity with such direct and meaningful contact with Oklahoma would certainly not offend any notions of fair play and substantial justice. Accordingly, Pepetools has established that this Court may exercise specific personal jurisdiction over Sunstone.

### (2) Pepetools has established general personal jurisdiction over Sunstone.

If Sunstone's contacts with Oklahoma do not satisfy the requirements of specific personal jurisdiction, the Court must consider whether Pepetools presents sufficient evidence to establish general personal jurisdiction. As noted, *supra,* where the events underlying the lawsuit are not related to the defendant's specific conduct in the state, the forum may exercise personal jurisdiction over that defendant if it maintains sufficient general contacts with the state. *Benton v. Cameco Corp.,* 375 F.3d 1070, 1080 (10th Cir. 2004), *cert. denied,* 544 U.S. 974 (2005) (citing *Helicopteros Nacionales,* 466 U.S. at 415, 104 S.Ct. 1868). "'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.' " *Benton,* 375 F.3d at 1080 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998)).

To determine if a defendant's contacts are sufficient for general personal jurisdiction, the Court should consider factors such as:

7

(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 457 (10th Cir. 1996).

Assuming, *arguendo*, the Court finds that the conduct complained-of in Pepetools' causes of action does not arise out of or related to Sunstone's contacts with Oklahoma, Pepetools submits that Sunstone's continuous and systematic contacts with Oklahoma at least during its course of business with Pepetools are sufficient for this Court to exercise general personal jurisdiction. Namely, over that four year period, Sunstone routinely directed communications to Pepetools in Oklahoma; at least twice sent representatives to Oklahoma for reasons related to Sunstone's business with Pepetools; and most importantly, engaged in a repeated course of conduct by which it directed at least $2,000,000-worth of goods to Oklahoma, specifically to the Pepetools facility. Sunstone has also apparently exceeded the $100,000 sales threshold at which it is determined to have formed a "nexus" with Oklahoma such that it must collect and remit Oklahoma sales tax. [*See* Aizenman Decl., at ¶ 22]. If the Court finds that those contacts do not form the basis for one or all of Pepetools' claims, Pepetools asserts that those same contacts are enough to support an exercise of general personal jurisdiction.

    **b.**   **Venue is Also Proper in this District Because "A Substantial Part of Property That is the Subject of the Action is Situated" in this District**

Sunstone's Motion conveniently omits that, under 28 U.S.C. § 1391(b)(2), venue is also proper in "a judicial district in which … a substantial part of property that is the subject of the action is situated." Not surprisingly, Sunstone's Motion does not so much as mention this prong of the venue statute, let alone apply it to the facts of this case. "Property" as used in 1391(b)(2) does not apply to just real property, it also includes personal property. *See RES-NV, LLC v. Rosenberg*, No. 2:13CV00115DAK, 2013 WL 3548697, at *4 (D. Utah July 11, 2013) (finding "watercraft and vehicles" to be included in the definition of "property" under 28 U.S.C. § 1391(b)(2)). Here, the "property" that is at least partly the subject of most of Pepetools' causes of action is Pepetools' independently-designed micro-welder over which Sunstone made threats of litigation.[2] [*See* Dkt. No. 1, at ¶¶ 40–41]. Those threats underlie at least five of Pepetools' six causes of action in this case. [*Id.* at ¶¶ 42–49, 56–80].[3] Currently, Pepetools has on-hand a significant number of those micro welders in inventory at its Oklahoma City facility. [Aizenman Decl., at ¶ 23]. Thus, 28 U.S.C. § 1391(b)(2) provides a separate and independent basis for venue in this District.

---

[2] While the Pepetools' independently-designed micro-welder was not offered for sale at the time Pepetools filed the Complaint, the accusations in Sunstone's cease-and-desist letters include claims that Pepetools took advantage of its access to the Sunstone facility and certain supplier information in designing the now-released micro-welder.

[3] Three of Pepetools' six causes of action arise distinctly under Oklahoma statutes: First Cause of Action (Violation of the Oklahoma Statute Regarding Prohibited Communications Related to Patent Infringement, Okla. Stat. tit. 23, § 111 *et seq.*); Third Cause of Action (Violation of the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51 *et seq.*); and Fifth Cause of Action (Declaratory Judgment of No Misappropriation of Trade Secrets Under the Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78, § 85 *et seq.*).

II.    **THE COURT SHOULD DENY DEFENDANT'S MOTION TO TRANSFER VENUE BECAUSE SUNSTONE HAS NOT CARRIED ITS BURDEN OF SHOWING THAT THE WESTERN DISTRICT OF OKLAHOMA IS INCONVENIENT OR THAT "THE BALANCE IS STRONGLY IN FAVOR" OF TRANSFER**

The transfer of a civil action from one federal judicial district to another district where it might have been brought is governed by 28 U.S.C. § 1404(a), which authorizes such a transfer "[f]or the convenience of parties and witnesses, in the interest of justice." A permissive transfer under this provision "lies within the sound judicial discretion of the trial judge," who must examine the "circumstances of each particular case" in exercising his discretion. *See Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). "The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Emp. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

The Tenth Circuit has directed district courts considering a § 1404 transfer to "weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical."

10

*Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). Generally, the first factor weighs heavily against a transfer: "'Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.'" *Id.* at 1167–68 (quoting *Scheidt*, 956 F.2d at 965). Here, all of the above factors weigh strongly in favor of denying Sunstone Motion to Transfer. In any event, Sunstone has not carried its burden of showing that "the balance is strongly in favor" of transfer.

> a. **Application of the Private Interest Factors Weighs Heavily In Favor of Pepetools' Choice of Forum—the Western District of Oklahoma**

Pepetools, a company organized under the laws of Oklahoma and headquartered in the Western District of Oklahoma, chose to commence this action in this Court. Thus, in order for the Court to transfer this action, Sunstone must demonstrate that application of the remaining factors strongly supports transfer. In attempting to carry this burden, Sunstone essentially argues that the District of Utah would be more convenient for Sunstone, not that the Western District of Oklahoma is inconvenient. Sunstone even goes so far to make the points that "[t]he District of Utah is therefore more convenient for the parties and most of the material fact witnesses." [Motion, at p. 18]. However, "[m]erely shifting the inconvenience from one side to the other … is not a permissible justification for a change of venue." *Scheidt*, 956 F.2d at 966.

Sunstone hinges its argument that the District of Utah is the "more convenient" forum (even though that is the incorrect standard § 1404(a) transfer) on the private interest factors of "accessibility of witnesses and sources of proof" and the "cost of making the

11

necessary proof." [Motion, at p. 17]. Sunstone provides scant analysis of the facts of this case applied to those factors, but even the little analysis it does provide falls far short of carrying the burden to support transfer. First, Sunstone identifies only a single third-party witness to support this argument: former Sunstone employee, Corbin Worthen. Sunstone's argument is essentially that because Worthen is no longer employed by Sunstone, he is not within this Court's subpoena power. *Id.* at p. 18. That is not entirely correct as Fed. R. Civ. P. 45 provides for nationwide service of process, which the parties can rely on to procure Mr. Worthen's testimony and production of documents, even if "compliance" with that subpoena must occur in Mr. Worthen's home district. Given the modern state of national, complex litigation where the parties are relying more and more on video depositions, the fact that Mr. Worthen is no longer a Sunstone employee and does not reside in Oklahoma should be afforded little weight. There is, of course, no guarantee that Mr. Worthen will even be needed by either party at trial. Additionally, even though Sunstone has identified only a single third-party witness, Pepetools has identified five more in the concurrently-filed declaration of Mr. Aizenman. [Aizenman Decl., at ¶ 24]. Those five witnesses reside in Texas, New Mexico, Florida, New Jersey, and Toronto, Ontario, respectively. *Id.* Moreover, to the extent Sunstone attempts to argue in reply that the location of potential documentary evidence in Utah supports transfer, the location of such documentary evidence is a "minor consideration" in the § 1404(a) analysis. *Whyte Monkee Productions, LLC v. Netflix, Inc.*, No. CIV-20-933-D, 2021 WL 6012299, at *3 (W.D. Okla. Feb. 1, 2021) (citing *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, No. CIV-07-1516-DME-

BNB, 2008 WL 2113344, at *3 (D. Colo. May 19, 2008). If anything, the location of potential third-party sources of proof weighs strongly against transfer.

b. **Pepetools is not Bound by the Terms and Conditions Found on Sunstone's Website**

Sunstone appears to rest its argument that this action should be transferred to the District of Utah on the existence of terms and conditions on its website that Sunstone concedes has not been signed by Pepetools. However, Sunstone has not cited any authority that either Utah or Oklahoma contract law has been extended to bind non-signatories through such "browsewrap" agreements. Sunstone cites *Hewitt v. Salina*, No. CIV-11-969-M, 2012 WL 29154, at *1 (W.D. Okla. Jan. 5, 2012), and *Mich. Ele. Emps. Health Plan v. Granite Re, Inc.*, No. CIV-10-1164-D, 2011 WL 1870234 (W.D. Okla. May 16, 2011), for the proposition that this and other local courts have held that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." [Motion, at p. 21]. However, the major distinction between those cases and the present one is that those cases involved instances where at least somebody or some entity with some relation to the dispute between the parties had actually signed an agreement that contained the forum selection clause at-issue. *See Hewitt*, 2012 WL 29154, at *1, and *Mich. Ele. Emps. Health Plan*, 2011 WL 1870234, at *4. Here, no person or entity with any relation to Pepetools ever signed any version of the terms and conditions that Sunstone seeks to enforce here. Further, in *Hewitt v. Salina*, there was a signed Offer of Employment that included a forum selection clause between the plaintiff and C.R.

13

England, Inc., a defendant and the party that sought to enforce the forum selection clause. 2012 WL 29154, at *1. Again, here, there is no such signed agreement that includes a forum selection clause between Pepetools (or anybody acting on behalf of or closely related to Pepetools) and Sunstone.

Presumably knowing this, Sunstone resorts to an argument that this Court should enforce a "browsewrap" agreement between Pepetools and Sunstone that would bind Pepetools to Sunstone's terms and conditions, including the forum selection clause. However, Sunstone does not cite a single case in which a court, applying Utah or Oklahoma law, has ever enforced such a browsewrap agreement. The cases that Sunstone does cite to support its argument are inapposite to the facts of this case.

In *Ticketmaster Corp. v. Tickets.Com, Inc.*, Case No. 99-cv-7654, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003), the U.S. District Court for the Central District of California indeed enforced a "browsewrap" agreement. However, it only did so upon evidence that the party against whom the agreement was enforced "employed an electronic program called a 'spider' or 'crawler' to review the internal web pages" of the party that sought to enforce the browsewrap agreement and that there was evidence that the defendant was "fully familiar with the conditions [the party that sought to enforce the agreement] claimed to impose on users" including a letter from the enforced to the defendant quoting those conditions and a response from the defendant stating it did not accept the conditions. *Id.* at *2. The district court went on to articulate the rule it developed from the facts of that case: "Thus, as relevant here, a contract can be formed by proceeding into the interior web pages after knowledge (or, in some cases, presumptive knowledge) of the conditions

14

accepted when doing so. *Id.* None of the conditions under which the district court there found an enforceable browsewrap agreement are present here. There is no evidence Pepetools employed a "crawler" or "spider" to review the internal web pages of Sunstone. There is no evidence that anybody at Pepetools had knowledge—actual, presumptive, or otherwise—of the terms and conditions Sunstone seeks to enforce here, namely the forum selection clause, before reviewing Sunstone's website. There is not even any evidence in the record, only inference, that anybody from Pepetools ever even visited or reviewed Sunstone's website. The most Sunstone can say is that "Google will likely have information definitively showing each time [Pepetools] visited the Terms and Conditions." [Motion, at p. 4]. It is Sunstone's burden to establish that Pepetools visited Sunstone's terms and conditions and, thus, a browsewrap agreement was created, yet all if can say is that a third party is "likely" in possession of information demonstrating with Pepetools is *required* to present here. Not only does *Ticketmaster* have no applicability here, even if it did, Sunstone has not provided the requisite evidence for it to apply.

Similarly, in *Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007), the next browsewrap case cited in the Motion, the Northern District of Texas found a browsewrap agreement only where there was "no dispute that [the defendant had] actual knowledge of Southwest's Terms at least since [the defendant's founder] received from Southwest the December 20, 2005 cease-and-desist letter in which Southwest informed [the founder] that the Terms forbid the use of the Southwest website for commercial purposes." *Id.* at **6–7. Here, Sunstone has presented no evidence, other than the self-serving declarations of its own employees, that Pepetools was ever even made

15

aware of the existence of the terms and conditions on the website. None of the documents that Sunstone attaches to those declarations actually shows that the terms and conditions were ever provided to or discussed with Pepetools. The closest they come is attaching correspondence that Pepetools personnel had with Sunstone about the warranty period. [*See* Dkt. No. 8-6]. Sunstone has not provided any evidence that Pepetools, or anybody on its behalf, ever visited the Sunstone website, namely the page containing the Terms and Conditions. Moreover, it is unclear whether the Sunstone terms and conditions were conspicuously posted or whether the terms and conditions would even apply to the relationship between Pepetools and Sunstone. Finally, the cease-and-desist letters sent by Sunstone's counsel that led to Pepetools' filing of this suit do not mention, reference, or incorporate Sunstone's terms and conditions. [*See* Dkt. Nos. 1-3–1-5]. Shortly, at a minimum, there is a dispute here whether Pepetools had knowledge of Sunstone's terms and conditions that is required for the formation of a browsewrap agreement. That dispute should be resolved in Pepetools' favor.

Sunstone's Motion also cites to a Second Circuit case, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403–04 (2d. Cir. 2004), that is addressed in *Southwest Airlines*. As the district court noted in *Southwest*, the Second Circuit found a browsewrap agreement only because "it was undisputed that the users of [the] website had actual knowledge of the terms and conditions posted on the site" because the defendant had "conceded that it was aware of the restrictions [the website owner] placed on the use of" information available on the website and "that by using such information for its own marketing opportunities it was violating those restrictions." *Southwest*, 2007 WL 4823761, at *6. Sunstone's Motion,

16

however, fails to mention the other Second Circuit case, *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002), discussed in *Southwest*, presumably because the Second Circuit found no browsewrap agreement. In *Specht*, the Second Circuit "noted that an essential ingredient to contract formation is the mutual manifestation of assent," and refused to find such assent, and thus a browsewrap agreement, "[b]ecause notice of Netscape's license terms was not reasonably conspicuous to an average user … the [website users] were not placed even on constructive notice of the existence of such terms, and thus were not bound by them." *Southwest*, 2007 WL 4823761, at *5. The Second Circuit described *Specht* and *Register.com* "crucially different" because, in *Specht*, "there was no basis for imputing to the downloaders of Netscape's software knowledge of the terms on which the software was offered." *Id.* at *6 (quoting *Register.com*, 356 F.3d at 402).

Even though browsewrap agreements, to the extent they've been acknowledged, are creatures of state contract law, Sunstone's Motion does not cite a single Utah or Oklahoma case—the two states' jurisprudence that could potentially apply here— acknowledging the concept of a browsewrap agreement, let alone finding one in the circumstances at-issue here. Nor did Pepetools' research yield any such case under either state's body of law. Thus, Sunstone has not even provided this Court any potentially binding authority supporting that it could bind Pepetools to terms and conditions it undisputedly did not sign or otherwise assent to.

Even if this Court was to find that the body of contract law in either Oklahoma or Utah recognizes browsewrap agreements, the circumstances here are much more akin to

17

those in *Specht* as opposed to those in the non-binding authorities cited by Sunstone. The only evidence Sunstone has provided the Court to suggest that Pepetools was even aware of the terms and conditions is the say-so and self-serving and misleading, declarations of its employees. Even then, not a single email or other document attached to those declarations mentions or provides a link to Sunstone's terms and conditions. The closest Sunstone comes is Attachment No. 2 to the Declaration of Adam Carlson [Dkt. No. 8-6], in which Mr. Carlson copies what he refers to as the "legalize." The problem with that "legalize" is that Mr. Carlson does not identify it as coming from any terms and conditions. Even if he did, the limited warranty included in the excerpt copied by Mr. Carlson is for two years, not the one-year warranty included in the terms and conditions to which Sunstone would have this Court bind Pepetools. [*See* Dkt. No. 8-6, at p. 8].

It is also telling that, during Sunstone's insistence that Pepetools sign the Distributor and/or Intellectual Property Agreements, its representatives never referenced any terms and conditions or stated those proposed agreements would supersede terms and conditions it now asserts were in place the entire time. There is also an interpretation that the terms and conditions on the Sunstone website govern the relationship between Sunstone and end users, not Sunstone and its dealers and distributors. This is mainly because the terms and conditions that Sunstone wants to enforce here place prohibitions on the purchaser's ability to resell. Such a restriction would defeat the purpose the dealers and distributors purchasing Sunstone's products.

Further, Pepetools' President, Mr. Aizenman, has submitted a declaration swearing, under penalty of perjury, that he never agreed to Sunstone's terms and conditions, and that

18

in his many communications with Sunstone's representatives, those terms and conditions were never mentioned as something to which Pepetools was bound. [Aizenman Decl., at ¶ 17]. That conflicting fact should be construed in Pepetools' favor. Moreover, Mr. Aizenman attests that he has "no record or recollection of receiving copies of the warranty claims attached to the Declaration of Adam Carlson as Attachment No. 1, that include links to Sunstone's terms and conditions." *Id.* at ¶ 18. Contrarily, Mr. Aizenman has reviewed hundreds of invoices, shipping documents, and emails sent from Sunstone and not a single one includes a link to Sunstone's terms and conditions. *Id.* at ¶ 19, Ex. 8 thereto.

In short, Sunstone has provided this Court no binding authority through which it could acknowledge the doctrine of "browsewrap agreements," let alone the evidence to support the existence of one under those circumstances. Sunstone presents nothing more than supposition that Pepetools should be bound by Sunstone's terms and conditions because somebody at Pepetools must have reviewed them at some point. That is not enough to find the existence of a browsewrap agreement, and it's certainly not enough to bind Pepetools to the forum selection clause. Accordingly, Sunstone has not carried its burden under 28 U.S.C. § 1404(a), and its Motion to Transfer Venue must be denied.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion.

19

Dated: January 18, 2024                    Respectfully submitted,


                                           */s/ Evan W. Talley*
                                           Evan W. Talley, OBA #22923
                                           DUNLAP CODDING, PC
                                           609 W. Sheridan Avenue
                                           Oklahoma City, OK  73102
                                           Tel: 405-607-8600; Fax: 405-607-8686
                                           etalley@dunlapcodding.com

                                           ***Attorneys for Plaintiff, Pepe Tools, Inc.
                                           d/b/a Pepetools, Inc.***

20

## CERTIFICATE OF SERVICE

I hereby certify that on the January 8, 2024, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on the records currently on file, in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.


*/s/ Julie Oseland*
Julie Oseland

.

21