IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEPE TOOLS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. CIV-23-907-D |
| SUNSTONE ENGINEERING, LLC, | ) ) ) |
| Defendant. | ) |

**O R D E R**

Before the Court is Defendant's Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue [Doc. No. 8] under Fed. R. Civ. P. 12(b)(2) and (b)(3) and 28 U.S.C. § 1404(a) or § 1406(a).  Defendant Sunstone Engineering, LLC alleges that personal jurisdiction is lacking in this forum because it is a nonresident of Oklahoma and has insufficient contacts with the state to satisfy due process.  Defendant submits declarations of its officers and employees [Doc. Nos. 8-1 to 8-7] providing relevant information and documents.  Plaintiff Pepe Tools, Inc. has filed a response [Doc. No. 11] that is similarly accompanied by the declaration of its president [Doc. No. 12].  Defendant has replied [Doc. No. 13].  Thus, the Motion is fully briefed and ripe for decision.

**Factual and Procedural Background**

Plaintiff brings suit for declaratory and injunctive relief and damages related to Defendant's termination of their business relationship and Defendant's allegations that Plaintiff misappropriated trade secrets and infringed patents and trademarks.  Plaintiff claims that Defendant breached purchase-order contracts and violated Oklahoma statutes

prohibiting certain patent-related communications and deceptive trade practices, specifically, Okla. Stat. tit. 23, § 111 *et seq*. and Okla. Stat. tit. 78, § 51 *et seq*. Plaintiff also seeks a determination that it has not violated federal and state laws prohibiting misappropriation of trade secrets: Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*.; Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78, § 85 *et seq*.; and Utah Uniform Trade Secrets Act, Utah Code § 13-24-1 *et seq*. Plaintiff invokes both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331.[1]

Briefly stated, Plaintiff alleges that Defendant is a manufacturer and seller of micro welding machines for permanent jewelry, that Plaintiff began distributing Defendant's products in 2020 and became its largest distributor by 2023, but that their relationship ended after Defendant proposed the execution of written agreements to which the parties could not agree. Plaintiff alleges that, when it would not accede to certain contract terms, Defendant refused to fulfill substantial purchase orders that had already been accepted and then sent a series of "cease and desist" letters that terminated their distribution relationship and accused Plaintiff of misappropriating trade secrets and infringing unspecified patents and trademarks. The last letter dated June 21, 2023, expressly threatened litigation. Copies of the letters are attached to the Complaint as exhibits [Doc. Nos. 1-3 to 1-5].

---

[1] Plaintiff does not allege facts that establish the citizenship of Defendant, a limited liability company or LLC. An LLC has the citizenship of all its members, including members of constituent LLC's. *See Mgmt. Nominees, Inc. v. Alderney Invs., LLC*, 813 F.3d 1321, 1324 (10th Cir. 2016); *Gerson v. Logan River Acad.*, 20 F.4th 1263, 1269 n.2 (10th Cir. 2021). The Complaint states only Defendant's state of organization and principal place of business. *See* Compl. ¶ 2. However, Defendant's disclosure statements [Doc. Nos. 5 and 10] identify its members and show none is a citizen of Oklahoma.

By its Motion, Defendant asserts that this Court lacks personal jurisdiction over it as a Utah limited liability company operating a business in Utah and having no significant connection to Oklahoma.[2]  Defendant also asserts that, absent personal jurisdiction, venue is improper in this judicial district under 28 U.S.C. § 1391(b)(3) and that Plaintiff consented to the terms and conditions of its product sales, which included a forum selection agreement.  Defendant seeks dismissal of the action or, alternatively, a transfer of venue to the District of Utah under 28 U.S.C. § 1404(a) (for convenience of the parties) or § 1406(a) (to cure a defect in jurisdiction or venue).  Because personal jurisdiction is a threshold question that a federal court must address as a preliminary matter, the Court begins with the jurisdictional issue.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

**Standard of Decision**

Plaintiff "bears the burden of establishing personal jurisdiction over defendant." *Intercon, Inc. v. Bell Atl. Internet Sol.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).  Where the issue is presented for decision on the basis of allegations and affidavits, Plaintiff "need only make a prima facie showing that jurisdiction exists."  *Intercon*, 205 F.3d at 1247; *see Shrader*, 633 F.3d at 1239; *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020).  At this stage, the Court must accept "as true all well-pled (that is, plausible, non-

---

[2] In asserting that it is not a resident of Oklahoma for purposes of personal jurisdiction, Defendant properly focuses on facts that establish the LLC's domicile in Utah, rather than facts showing its citizenship for purposes of diversity jurisdiction. *See Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1219 & n.1 (10th Cir. 2021) (nonresident defendant was Florida LLC with sole office in Florida; personal jurisdiction over its members "was derivative of" jurisdiction over the LLC).

conclusory, and non-speculative) facts alleged in plaintiff's complaint" and "resolve any factual disputes in the plaintiff's favor." *Shrader*, 633 F.3d at 1239; *see Intercon*, 205 F.3d at 1247. But "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit . . . based on personal knowledge of the party with direct access to the operative facts." *Shrader*, 633 F.3d at 1248.

"To show personal jurisdiction over a nonresident in a diversity action, [a plaintiff] must demonstrate that jurisdiction is proper under the laws of the forum state – in this case Oklahoma – and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Dental Dynamics*, 946 F.3d at 1228. Under Oklahoma law, the personal jurisdiction inquiry is simply a due process analysis. *Intercon*, 205 F.3d at 1247; *see Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012). This familiar standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292(1980); *Intercon*, 205 F.3d at 1247.[3]

---

[3] Even without diversity jurisdiction, similar principles would apply. "[B]efore a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (internal quotation omitted); *see Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Because the federal statute invoked by Plaintiff does not authorize nationwide service of process, the federal rules authorize the application of the Oklahoma long-arm statute. *See* Fed. R. Civ. P. 4(k)(1)(A); *Hood*, 21 F.4th at 1220 (applying Rule 4(k)(1)(A) under Telephone Consumer Protection Act, 47 U.S.C. § 227); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (same under Copyright Act, 17 U.S.C. § 101 *et seq.*, and Declaratory Judgment Act, 28 U.S.C. § 2201); *Trujillo*, 465 F.3d at 1217 (42 U.S.C. § 1983).

**Discussion**

A.  **Minimum Contacts – Legal Standard**

The minimum contacts standard may be satisfied by showing general or specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017). General jurisdiction refers to a court's power to hear claims against a nonresident defendant whose "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919) (alteration in *Daimler*).[4] Specific jurisdiction requires that "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers*, 582 U.S. at 262 (quoting *Daimler*, 571 U.S. at 127, with alteration and emphasis added in *Bristol-Myers*). Specific personal jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 472); *see Intercon*, 205 F.3d at 1247; *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005). To satisfy the first element, Plaintiff must demonstrate that Defendant

---

[4] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924; *see Bristol-Myers*, 582 U.S. at 262; *Daimler*, 571 U.S. at 137. "'[O]nly a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Bristol-Myers*, 582 U.S. at 262 (quoting *Daimler*, 571 U.S. at 137).

"'purposefully directed' its activities at the forum state . . . [or] 'purposely availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071; *see Pro Axess*, 428 F.3d at 1277. This element requires affirmative conduct that creates a substantial connection to the state; "random, fortuitous, or attenuated contacts" or "the unilateral activity of another party" is insufficient. *See Burger King*, 471 U.S. at 475 (internal quotations omitted).

Plaintiff makes a conclusory argument for general jurisdiction that disregards the applicable standard. Plaintiff relies on facts regarding Defendant's course of business with Plaintiff that, at most, may establish specific jurisdiction for this lawsuit. *See* Pl.'s Resp. Br. at 8. The Court thus considers whether Plaintiff's showing is sufficient to establish specific personal jurisdiction in this forum for the underlying controversy with Defendant.

**B.    Minimum Contacts – Application to Plaintiff's Case**

The Court first observes that Plaintiff's jurisdictional theory is not entirely clear. Although Plaintiff refers to its breach of contract claim, Plaintiff does not present sufficient facts to show specific jurisdiction for a contract action. "In order to assess whether minimum contacts occurred in a contract case, we look at 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *AST Sports Science, Inc. v. CLF Distrib. Ltd*. 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," but additional facts that demonstrate the pursuit of an ongoing business relationship connected to the forum will support jurisdiction. *Id*. at 1059; *see Dental Dynamics*, 946 F.3d at 1230

(business relationship between Oklahoma LLC and Arkansas LLC did not establish sufficient contacts with Oklahoma for breach of contract action here).

Plaintiff's contract claim is based on two purchase orders that Plaintiff submitted, and Defendant allegedly accepted, in May 2023. *See* Compl. ¶¶ 18-19, 51-52. Plaintiff does not identify any facts regarding these alleged contracts that would support specific jurisdiction over Defendant in Oklahoma. To the extent Plaintiff contends the parties had a contractual relationship regarding the distribution of Defendant's products, Plaintiff provides few facts regarding their negotiations, course of dealing, contractual obligations, or ongoing consequences, and these facts do not link Defendant to Oklahoma. For example, Plaintiff's president and manager of operations, David Aizenman, states that representatives of the two companies worked together "at trade shows for over a decade" and began doing business "as a result of a trade show in Hong Kong" and email correspondence that he initiated. *See* Aizenman Decl. ¶¶ 3-4 and Ex. 1 [Doc. No. 12-1]. Defendant later offered to promote Plaintiff's business in its marketing publications, to provide free advertising in an industry magazine, and to join in a "co-branded webinar" and a trade show in New York. *See* Aizenman Decl. ¶¶ 5-8 and Exs. 2-5 [Doc. Nos. 12-2 to 12-5]. Plaintiff does not state where the publications or magazine were distributed or provide any information about the webinar.

Plaintiff relies heavily on the "amount of business that Sunstone and Pepetools conducted between 2019 and 2023" and cites "two instances in which Sunstone representatives visited Oklahoma for reasons directly related to its business with Pepetools," and a time period when Mr. Aizenman had frequent telephone communications

with Defendant's representatives.  *See* Pl.'s Resp. Br. at 6; Aizenman Decl. ¶¶ 9-12.[5] However, these facts do not establish the existence of a distribution contract between the parties with significant ties to Oklahoma.[6] The Court therefore finds that Plaintiff has failed to establish specific jurisdiction for a contract action against Defendant in this forum.

Plaintiff appears to rely for its jurisdictional showing on the analysis for tort actions established by *Calder v. Jones*, 465 U.S. 783 (1984).  In a tort-based action, "'purposeful direction' has three elements:  (a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Niemi v. Lasshoffer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (internal quotation omitted); *see Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016); *Dudnikov*, 514 F.3d at 1072.  The Supreme Court clarified the "purposeful direction" standard in *Walden v. Fiore*, 571 U.S. 277 (2014).  "*Walden* teaches that personal jurisdiction cannot be based on [a defendant's] interaction with a plaintiff known to bear a strong connection to the forum state." *Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014).  Instead, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.  This "defendant-focused" inquiry requires that "the relationship

---

[5] About the two visits by Defendant's representatives, Plaintiff states only that "the purpose of their [first] visit was unclear" and the second was to make a presentation at an industry convention sponsored by Plaintiff in Oklahoma City.  *See* Aizenman Decl. ¶¶ 10-11.

[6] To the contrary, Mr. Aizenman describes failed negotiations for a distribution contract and states that the parties had no "formal agreement" other than "the purchase order process as outlined in Pepetools' Complaint." *See* Aizenman Decl. ¶¶ 13-15.

between a defendant and the forum State must arise out of contacts that the defendant *himself* creates with the forum State" and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 284, 285 (internal quotation omitted, emphasis in original); *see Anzures*, 819 F.3d at 1280.

Plaintiff contends Defendant purposely directed its business and sales activities at Oklahoma through a distribution relationship with an Oklahoma-based business and through targeted efforts to enforce Defendant's intellectual property rights in this state through cease-and-desist letters demanding the removal of its products from Plaintiff's website and threating litigation. These enforcement efforts came through correspondence sent by a Utah attorney to an Oklahoma attorney addressed as counsel for Plaintiff. *See* Compl. Ex. Nos. 3-5 [Doc. Nos. 1-3 to 1-5]. Defendant's business efforts included sending its representatives to visit Plaintiff's facilities and participating in an industry convention here, and like a copyright owner in *Dudnikov*, Defendant demanded that Plaintiff halt sales of existing inventory in Oklahoma and stop any plans to develop or sell competing products from Oklahoma.

The individual plaintiffs in *Dudnikov* sold goods produced by a small business operated from their home in Colorado through an internet auction website, eBay. The defendants were a British corporation that owned the copyrights to famous images and its American agent, a Delaware corporation with its principal place of business in Connecticut. The defendants claimed certain fabric prints made and offered for sale by the plaintiffs infringed the copyrights, and they invoked eBay's program for resolving infringement claims by giving notice to eBay in California. Under the program, the notice caused the

9

automatic termination of an ongoing auction and had other adverse consequences, including the possible suspension of the plaintiffs' eBay account. The court found that the plaintiffs had sufficiently shown "purposeful direction under *Calder*" for specific jurisdiction over the defendants in Colorado for a tortious interference lawsuit. *Dudnikov*, 514 F.3d at 1078. The defendants' notice to eBay intentionally halted an auction taking place in Colorado, and they subsequently emailed the plaintiffs directly in Colorado threatening to sue them to prevent future sales of the allegedly infringing product. Also, the "plaintiffs' injury was suffered entirely in the forum state, Colorado." *Id*. at 1077.

Upon consideration, the Court finds that Plaintiff's showing is minimally sufficient to establish suit-related conduct by Defendant that was purposely directed at Oklahoma and creates a substantial connection for Plaintiff's suit in this forum. Similar to *Dudnikov*, Defendant took intentional actions aimed at halting Plaintiff's Oklahoma-based sales of Defendant's products held in inventory here, and communicated directly with Plaintiff in Oklahoma its demands to remove Defendant's products from Plaintiff's online sales platform and cease development of Plaintiff's own products. Through their informal distribution arrangement, Defendant knew Plaintiff's Oklahoma-based activities involved a significant volume of sales of Defendant's products, and Defendant was aware that its infringement claims would significantly impact Plaintiff's existing and planned business in Oklahoma. Plaintiff's alleged injury was suffered entirely in Oklahoma. Defendant's actions directed at Oklahoma form the basis of Plaintiff's claims. Thus, this lawsuit arose out of Defendant's contacts with Oklahoma.

## C. Substantial Justice

The remaining question is "whether the exercise of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Burger King*, 471 U.S. at 476. "[W]here a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 477 U.S. at 478; *see Dudiknov*, 514 F.3d at 1080; *Pro Axess*, 428 F.3d at 1280. Relevant factors include:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Dudiknov*, 514 F.3d at 1080 (internal quotation omitted); *Pro Axess*, 428 F.3d at 1279-80; *see Dental Dynamics*, 946 F.3d at 1229. In this case, Defendant acknowledges these factors but presents only conclusory arguments regarding them, largely colored by its view that this case is about sales transactions completed in Utah. *See* Def.'s Mot. at 14.

Upon consideration, the Court finds that Defendant has failed to carry its burden to demonstrate facts that would render the Court's exercise of jurisdiction unreasonable. Defendant does not identify a significant burden on it from litigating this case in Oklahoma, stating only that it may be unable to obtain compulsory attendance of a witness who is a former employee. Also, Defendant incorrectly states that Oklahoma has a minimal interest in adjudicating this dispute. A state has "an important interest in providing a forum in

11

which [its] residents can seek redress for injuries caused by out-of-state actors," particularly where the dispute involves "a general application of the forum's state laws." *Pro Axess*, 428 F.3d at 1280. Notably, Plaintiff seeks redress under Oklahoma statutes that provide a remedy for the alleged patent-related communications at issue. Defendant's assertion that "efficiency in judicial resolution favors Utah" is based on a bare assertion that "the majority of relevant events occurred" in Utah; Defendant does not address the location of witnesses and evidence. *See* Def.'s Mot. at 14. Defendant also does not identify a fundamental social policy at stake. In short, the Court finds that Defendant has not shown that a lawsuit against it in Oklahoma offends notions of fair play and substantial justice.

**D.    Permissive Transfer of Venue**

If the case is not dismissed for lack of personal jurisdiction, Defendant moves for a transfer of venue to the United States District Court for the District of Utah under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." Plaintiff does not disagree that this case might have been brought in the federal district court in Utah but opposes a § 1404(a) transfer there. The parties also dispute whether a valid forum selection clause was part of a sales agreement allegedly created by Plaintiff's implied consent to Defendant's terms and conditions of sale stated on its internet website.

Ordinarily, "[t]he party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal quotation omitted). And as a general rule, district courts considering a permissive transfer under § 1404(a) should "weigh the following discretionary factors:"

12

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 (2013) (internal quotation omitted). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* (footnote omitted). Further, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63.

Defendant relies on a mandatory forum selection provision that appears on its website as part of the "Terms and Conditions" for sales of its products. *See* Def.'s Mot., Exs. 3 & 4 [Doc. No. 8-3 and 8-4], § 24 (Dispute Resolution). The provision covers "any dispute . . . arising out of or relating to this Agreement." *Id.* The "Agreement" is comprised collectively of "[t]he accompanying quotation of sale (the "Sales Quotation") provided to Buyer, and/or sales order acknowledgement ("Acknowledgement") and these Terms," which is defined as "[t]hese terms and conditions of sale." *Id.* § 1. Defendant does not

13

address whether this case arises out of or relates to an "Agreement," as defined by the Terms and Conditions.

As discussed above, the claims asserted in the Complaint are primarily based on Defendant's conduct in terminating the parties' distribution relationship and accusing Plaintiff of infringement. However, one claim concerns Defendant's alleged breach of sales contracts created by Plaintiff's submission of two purchase orders that Defendant accepted but did not fulfill. Defendant does not provide any information regarding these alleged transactions. In response to the Motion, Plaintiff presents evidence that appears to consist of a purchase order submitted by Plaintiff and an invoice issued by Defendant. *See* Aizenman Decl. ¶ 15, Ex. 7 [Doc. No. 12-7]. It is unclear whether these documents satisfy the definition of an "Agreement." If they do, the question becomes whether the Terms and Conditions on Defendant's website are enforceable as part of it.

The focus of Defendant's argument for the enforceability of the Terms and Conditions is whether Plaintiff had sufficient notice of them to create an implied contract, commonly referred to as a "browsewrap" agreement. *See* Def.'s Mot. at 20-23. This term refers to internet or web-based contracts that "generally post terms and conditions on a website" to be viewed "via a hyperlink at the bottom of the screen" or electronic document. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). It differs from a "clickwrap" agreement, which is a web-based contract "requiring a computer user to consent to any terms or conditions by clicking on a dialogue box on the screen in order to proceed with a transaction." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (internal quotation

14

omitted). A browsewrap agreement involves no similar manifestation of assent, as required by traditional principles of contract formation. "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Meyer*, 868 F.3d at 75 (quoting *Nguyen*, 763 F.3d at 1176).

Neither the Tenth Circuit nor the highest court of Oklahoma has addressed browsewrap agreements, but consistent with other jurisdictions, these courts have applied basic contract law principles to other web-based contracts.[7] In *Hancock*, for example, the Tenth Circuit determined that clickwrap agreements between consumers and providers of television, internet, and voice services were valid and enforceable under Oklahoma law. *Hancock*, 701 F.3d at 1258. Applying contract law principles, the court held that "if a clickwrap agreement gives a consumer reasonable notice of its terms and the consumer affirmatively manifests assent to the terms, the consumer is bound by the terms." *Id.* at 1256 (footnote omitted).

Similarly, the Oklahoma Supreme Court determined in *Walker v. BuildDirect.Com Technologies, Inc.*, 349 P.3d 549, 554 (Okla. 2015), that a manufacturer's "Terms of Sale" on its internet website were not incorporated into a sales contract with a consumer because "[n]o reasonable prudent person, under the particular facts of this case, would have [had] notice" of the additional terms. The supreme court applied a rule of Oklahoma contract

---

[7] Defendant does not raise a choice of law issue.

law that "parties may incorporate by reference separate writings, or portions thereof, together into one agreement where (1) the underlying contract makes clear reference to the extrinsic document, (2) the identity and location of the extrinsic material may be ascertained beyond doubt, and (3) the parties to the agreement had knowledge of and assented to its incorporation." *Id*. The court in *Walker* viewed a chief consideration to be "whether the party to be bound had reasonable notice of and assented to the terms to be incorporated." *Id*. at 553. It articulated a general rule: "A party is deemed to have notice of incorporated terms where a reasonable prudent person, under the particular facts of the case, should have seen them." *Id*.

Here, Defendant provides no evidence that any document used to form the alleged contracts in this case referred to the Terms and Conditions. Defendant instead relies on the testimony of its employees stating facts to show that Plaintiff knew of, and implicitly assented to, the Terms and Conditions. These facts include that Defendant's employees had referred to them in past dealings with Mr. Aizenman when discussing Defendant's express warranties and customers' warranty claims, and that Plaintiff followed the shipping requirements stated in them. Defendant does not contend any representative of Plaintiff visited its website or was expressly informed that the Terms and Conditions were part of the parties' sales contracts. At most, Defendant presents facts to show inquiry notice of the Terms and Conditions, that is, a reasonable person in Plaintiff's position should have

investigated and seen them. *See* Def.'s Mot at 22 (arguing that its employees responses to Plaintiff's warranty questions "should have caused [Plaintiff] to investigate").[8]

Upon consideration of Defendant's factual materials and legal authorities, the Court is not persuaded that Defendant has established an enforceable agreement incorporating the Terms and Conditions on its website into the parties' sales contracts. In the Court's view, for this case to relate to an "Agreement" as defined in the Terms and Conditions, Defendant must show Plaintiff had reasonable notice that the sales contracts at issue in this case included the Terms and Conditions on Defendant's website.

The only contract documents are provided by Plaintiff and those documents contain no reference to the Terms and Conditions. Plaintiff contends, and Defendant does not dispute, that the parties' course of conduct involved making sales agreements in the same manner, that is, by an exchange of documents by email without using Defendant's internet website or making any reference to the Terms and Conditions that appear there. The Court accepts the facts presented by Defendant that its representatives sometimes referred to the website when Plaintiff sought information about warranties for dissatisfied customers. These facts would not necessarily suggest to Plaintiff, however, that Defendant viewed the Terms and Conditions as applicable to the parties' sales transactions. Further, the fact that Plaintiff complied with shipping terms stated on the website does not show that Plaintiff

---

[8] Defendant also relies, in part, on the fact that Plaintiff is a sophisticated user of e-commerce that makes internet sales to retail customers and includes terms of sale on its own website. *See* Reply Br. at 7-8.

obtained Defendant's shipping instructions there instead of receiving them from another source, such as its account representative or another employee of Defendant.

In short, the Court finds that Defendant has not presented sufficient facts to establish that Plaintiff had notice of the Terms and Conditions on Defendant's website and that the sales contracts at issue included them. Under these circumstances, the Court finds that Defendant has failed to show the existence of an implied forum selection agreement that is enforceable in this lawsuit.

Turning then to the usual § 1404(a) analysis, the Court considers the relevant factors and finds that Defendant has failed to justify a permissive transfer of venue. Plaintiff has chosen this forum and prefers the place where its business, witnesses, and evidence are located. The parties do not address any questions of appreciable difference in costs, the enforceability of any judgment, congested dockets, conflicts in state laws, or a need to decide local-law issues. Defendant focuses instead on a contention that one of its witnesses is a former employee who could not be compelled to attend proceedings here and that Defendant would have better access to its sources of proof in Utah. *See* Def.'s Mot. at 18.

The Court finds that Defendant has not carried its heavy burden to show that this forum is inconvenient. "Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal quotation omitted). "Unless weighing [the discretionary] factors demonstrates that the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id*. (internal quotation omitted). Further, "[t]he convenience of witnesses is the most important factor

in deciding a motion under § 1404(a)." *Id*. at 1169.  To demonstrate inconvenience, "the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.'" *Id*. (internal quotation and alterations omitted).  Defendant fails to make a satisfactory showing regarding its potential witnesses.

## Conclusion

For these reasons, the Court finds that personal jurisdiction and venue are proper in this forum and Defendant has not shown, on the present record, that this case should be transferred to Utah.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue [Doc. No. 8] is **DENIED**.

**IT IS SO ORDERED** this 1st day of July, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge